

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

**********************************************************************

| | | |
|---|---|---|
| FARMERS UNION OIL COMPANY[1], | * | CIV 07-1004 |
| | * | |
| Plaintiff, | * | |
| | * | |
| -vs- | * | MEMORANDUM OPINION |
| | * | AND ORDER |
| STELLA GUGGOLZ, WILLIAM P. ZUGER, | * | |
| Tribal Court Judge of the Standing Rock Sioux | * | |
| Tribal Court of the Standing Rock Indian | * | |
| Reservation; and THE STANDING ROCK | * | |
| SIOUX TRIBAL COURT, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**********************************************************************

## INTRODUCTION

Plaintiff, Farmers Union Oil Company ("Farmers Union" or "plaintiff"), a retailer operating a gas station and a convenience store, selling gas and sundries to the general public, is a South Dakota Cooperative Corporation conducting business on non-Indian fee land, within the exterior boundaries of the Standing Rock Sioux Indian Reservation ("Standing Rock"). *See* SDCL 47-15. Defendant Stella Guggolz ("Guggolz") is an enrolled member of the Standing Rock Sioux Tribe ("Tribe") and is a resident within the exterior boundaries of Standing Rock. Defendant Standing Rock Sioux Tribal Court ("Tribal Court") is a governmental unit serving the Tribe, which is a federally recognized Indian Tribe and which is located in North and South Dakota. Defendant, William P. Zuger ("Judge Zuger"), is the Associate Tribal Judge presiding over the underlying civil matter pending in Tribal Court.

---

[1] Plaintiff's complaint and subsequent filings incorrectly identify the plaintiff party as "Farmers Union Oil Company" or as "Farmer's Union Oil Company" and as a South Dakota Corporation. Plaintiff's registered corporate name is "Farmers Union Oil Company of McLaughlin." Further, plaintiff is a South Dakota Cooperative Corporation.

1

Defendant Guggolz's complaint in Tribal Court alleges personal injuries stemming from an alleged slip and fall incident on Farmers Union premises, while she was there to make a retail purchase. Farmers Union filed a special appearance and answered Guggolz's complaint, objecting to Tribal Court jurisdiction. Farmers Union then filed a motion to dismiss. This motion was briefed and argued by the parties. The Tribal Court denied the motion and Farmers Union did not petition the Standing Rock Sioux Tribal Supreme Court for interlocutory review of the Tribal Court decision. Instead, Farmers Union instituted this suit, pursuant to 28 U.S.C. § 1331, seeking to enjoin the prosecution of a civil action in the Tribal Court against Farmers Union and seeking a declaratory judgment that the Tribal Court lacks subject matter jurisdiction.

Shortly thereafter, Judge Zuger and the Tribal Court filed a motion to dismiss or stay the fedeal action pending exhaustion of tribal remedies (Doc. 10). Defendant Guggolz joined in defendants' motion and filed her own motion to dismiss or stay the action pending exhaustion of tribal remedies (Doc. 20). This opinion and order addresses these motions.

## DISCUSSION

### I.    STANDARD OF REVIEW

"Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and statutes enacted by Congress pursuant thereto." Marine Equipment Management Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993) (*citing* Bender v. Williams-Port Area School Dist., 475 U.S. 534, 541, 106 S. Ct. 1326, 1331, 89 L. Ed. 2d 501, *reh'g denied* 476 U.S. 1132, 106 S. Ct. 2003, 90 L. Ed. 2d 682 (1986), (*citing in turn* Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L. Ed. 60 (1803))). "The threshold inquiry in every federal case is whether the court has jurisdiction" and the Eighth Circuit has "admonished district judges to be attentive to a satisfaction of jurisdictional requirements in all cases." Rock Island Millwork Co. v. Hedges-Gough Lumber Co., 337 F.2d 24, 26-27 (8th Cir. 1964), and Sanders v. Clemco Industries, 823 F.2d 214, 216 (8th Cir. 1987).

A motion to dismiss for lack of subject matter jurisdiction challenges the court's power to hear the case. Mortensen v. First Savings and Loan Association, 549 F.2d 884, 891 (3 d Cir. 1977). Jurisdictional issues are for the court to decide and the court has broad power to decide its own right to hear a case. Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990) (*quoting* Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)). Because jurisdiction is a threshold

2

question, judicial economy demands that the issue be decided at the onset. Osborne, at 729.

Where, as here, the defendants move for dismissal under Rule 12(b)(1), Fed.R.Civ.P., as well as on other grounds, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." 5 C. Wright and A. Miller, Federal Practice and Procedure, § 1350, p. 548 (1969). *cf.*, Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction). "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

"The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." Drevlow v. Lutheran Church, Mo. Synod, 991 F.2d 468, 470 (8th Cir. 1993). *See also* Osborn, 918 F.2d at 729, fn. 4 (*citing* Land v. Dollar, 330 U.S. 731, 735 & fn. 4, 67 S.Ct. 1009, 1011 & fn. 4, 91 L.Ed. 1209 (1947), and Satz v. ITT Fin. Corp., 619 F.2d 738, 742 (8th Cir. 1980)). Such consideration does not convert a motion to dismiss into a motion for summary judgment. Deuser v. Vecera, 139 F.3d 1190, 1191 fn. 3 (8th Cir. 1998), Drevlow v. Lutheran Church, Mo. Synod, 991 F.2d 468, 470 (8th Cir. 1993). Plaintiff has the burden of establishing that jurisdiction exists. It is not the responsibility of defendants to prove otherwise. Titus, 4 F.3d at 593 fn. 1.

The Eighth Circuit, in Osborn, delineated the standard of review for motions to dismiss under Fed. R. Civ. P. 12(b)(1):

> [H]ere the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

918 F.2d at 730 (*quoting* Mortensen v. First Fed. Sav. & Loan Ass'n., 549 F.2d at 891).

However, courts have also recognized that the jurisdictional issue and substantive issues can be

3

so intertwined that a full trial on the merits may be necessary to resolve the issue. *Id.* (quoting Crawford v. United States, 796 F.2d 924, 928 (7th Cir. 1986)). *See also* Whalen v. United States, 29 F. Supp. 2d 1093, 1095-96 (D.S.D. 1998). The parties have submitted exhibits in support of and in resistance to the motion to dismiss and the court will consider such evidence as it relates to the jurisdictional challenge.

## II. TRIBAL COURT SUBJECT MATTER JURISDICTION

"The question of tribal court jurisdiction is a federal question of law [.]" Smith v. Salish Kootenai College, 434 F.3d 1127, 1130 (9th Cir. 2006) (*citing* Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 852-53, 105 S. Ct. 2447, 85 L. Ed. 2d 818 (1985), and FMC v. Shoshone-Bannock Tribes, 905 F.2d 1311, 1314 (9th Cir. 1990)). "Our case law establishes that, absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of non-members exists only in limited circumstances." Strate v. A-1 Contractors, 520 U.S. 438, 445, 117 S. Ct. 1404, 137 L. Ed. 2d 661 (1997).

In the watershed case of Montana v. United States, the United States Supreme Court held that the inherent sovereign powers of an Indian tribe do not, as a general proposition, extend to the activities of non-members of the tribe. 450 U.S. 544, 565-66, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981). The Court described two instances in which tribes could exercise such sovereignty. First, "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealings, contracts, leases, or other arrangements." *Id.* Second, "[a] tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health and welfare of the tribe." *Id.* at 566.

The unifying principle behind both exceptions is that, absent express congressional delegation, a tribe has civil authority over non-Indians only where such authority is "necessary to protect tribal self-government or to control internal relations." *Id.* at 564. Although Montana specifically addressed the regulatory rather than the adjudicatory jurisdiction of tribes, *see id.* at 557, there is nevertheless a presumption that if a tribe has authority under Montana to regulate the activities of a nonmember, jurisdiction over disputes arising out of those activities exists in the tribal courts. Strate, 520 U.S. at 453.

4

Having said this, the parties in the instant case dispute whether tribal jurisdiction exists under either <u>Montana</u> exception. Because the defendants focus primarily on <u>Montana</u>'s consensual relations exception, the Court will assess this claim first.

Consensual relation cases . . . "involve[ ] either direct regulation by a tribe of non-Indian activity on the reservation or lawsuits between a private party and the tribe or tribal members arising from an on-reservation transaction or agreement." <u>Ford Motor Co. v. Todecheene</u>, 394 F.3d 1170, 1180 (9th Cir. 2005) (*quoting* <u>County of Lewis v. Allen</u>, 163 F.3d 509, 515 (9th Cir. 1998) (*en banc*)). Consideration of this basis for tribal jurisdiction involves two separate questions: (1) whether Farmers Union formed a consensual relationship with the Tribe or its members and (2) whether the tribal tort law invoked by the defendants is an appropriate "other means" by which a tribe may regulate nonmember conduct. <u>Plains Commerce Bank v. Long Family Land & Cattle Co.</u>, 491 F.3d 878, 885 (8th Cir. 2007).

According to the defendants, the first prong of this jurisdictional test is easily satisfied because, irrespective of the status one uses, i.e. the Tribe or the individual tribal member, either is sufficient to establish tribal jurisdiction over Farmers Union. With respect to the claimed consensual relationship between the Tribe and Farmers Union, the defendants cite: (1) a history of extensive commercial dealings between tribal members and Farmers Union; (2) the plaintiff's history of utilizing Tribal Court to pursue overdue consumer accounts; and (3) the degree of direct regulation that the Tribe exercises over the plaintiff's business. Alternatively, concerning the claimed consensual relationship between Guggolz and Farmers Union, the defendants note both her history of commercial dealings with Farmers Union, beginning in October 2005, and her status as a business invitee when the accident allegedly occurred. In other words, according to defendants, Farmers Union formed a consensual relationship with Guggolz when they held open an invitation to the public to enter its premises for business purposes, and Guggolz did so.

Conversely, Farmers Union contends that, if any consensual relationship was formed, then it was with the Tribe, not with Guggolz. According to Farmers Union, Guggolz had no commercial dealings, contracts, leases, or other arrangements with Farmers Union on the occasion when the alleged injury occurred. In other words, according to plaintiff, Guggolz was not a business invitee, merely a visitor, and as a consequence, no consensual relationship was formed between the two.

5

Given the record submitted to the Court and the application of the standard of review, I find that the "commercial dealings" between Farmers Union and the Tribe or Guggolz were sufficient to form a consensual relationship. Prior holdings support my view. For example, in Cardin v. De La Cruz, the Ninth Circuit Court of Appeals held that the non-Indian owner of a grocery store on fee land inside the reservation had entered into "consensual relations" with the tribe "through commercial dealings," when the owner invited tribal members to come into the store for products and depended on them to support his business. 671 F.2d 363 (9th Cir. 1982). *See also* FMC, 905 F.2d at 1314-1315. Further, "[t]he Supreme Court, both before Montana and since, has repeatedly reaffirmed Indian tribes' civil authority over non-Indians doing business on the reservation, at least to the extent necessary to safeguard the interests of the tribe and its members." F. Cohen, Handbook of Federal Indian Law 253 (1982 ed.), and Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 137, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982) (acknowledging "the tribe's general authority, as sovereign, to control economic activity within its jurisdiction . . . "). In fact, "[t]ribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty." *See* Montana, 450 U.S. at 565-566, Fisher v. District Court, 424 U.S. 382, 387-389, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976), and Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 18, 107 S. Ct. 971, 978, 94 L. Ed. 2d 10 (1987). To summarize, when a non-Indian on-reservation business holds open an invitation to tribal members or a particular tribal member to patronize that business and they do patronize the business, this may be sufficient to form a consensual relation between the Tribe or the particular tribal member and that business.

However, as previously mentioned, the existence of a consensual relationship is not alone sufficient to support tribal jurisdiction. *See* Strate, 520 U.S. at 457. The tribal exercise of authority must also take the form of taxation, licensing, or "other means" of regulating the activities of the nonmember, Montana, 450 U.S. at 565, and this regulation must have some nexus to the consensual relationship. Atkinson Trading Co. v. Shirley, 532 U.S. 645, 656, 121 S. Ct. 1825, 149 L. Ed. 2d 889 (2001). In other words, a nonmember's consensual relationship in one area "does not trigger tribal civil authority in another." *Id.*

According to Farmers Union, the second prong of the jurisdictional test is not satisfied because the Tribe's regulatory and commercial relationship with Farmers Union, i.e. conducting business on the reservation, is unconnected to the underlying cause of action, namely premises

6

liability. In other words, plaintiff claims that the claimed negligence by Farmers Union has no connection to the regulatory or commercial relationship between Farmers Union and the Tribe. Further, Farmers Union claims that Guggolz is not connected in any way with the regulatory or commercial relationship between the Tribe and Farmers Union. Consequently, tribal jurisdiction is unwarranted.

The plaintiff's argument is unavailing. The tort of premises liability may be directly related to the consensual relationship formed by Farmers Union business invitation to enter upon its premises. Moreover, the alleged negligence in failing to properly maintain its premises may well be connected to the licensing agreements between the Tribe and Farmers Union. Properly maintaining the premises is part of conducting business. Accordingly, based upon the record and the application of the standard of review, there may be a sufficient nexus to invoke tribal jurisdiction.

Based on the foregoing, the Court need not reach the issue at this time of whether tribal jurisdiction exists under the second Montana exception. The Court finds a "colorable" claim of tribal jurisdiction may exist under the first Montana exception.

**III.   TRIBAL EXHAUSTION**

A district court may perform a *de novo* review of a tribal court's determination of its own jurisdiction. Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold Reservation, 27 F.3d 1294, 1300 (8th Cir. 1994), *cert. denied*, 513 U.S. 1103, 115 S. Ct. 779, 130 L. Ed. 2d 673 (1995), (*citing* Iowa Mut., 480 U.S. at 19, 107 S.Ct. 971)). Tribal courts though must in appropriate cases be given the first opportunity to determine whether they have the power to exercise jurisdiction over non-Indians. Nat'l Farmers, 471 U.S. at 856-57, 105 S. Ct. at 2454.

"The tribal exhaustion doctrine is based on a policy of supporting tribal self-government and self-determination and it is prudential, rather than jurisdictional. Gaming World Intern., Ltd. v. White Earth Band of Chippewa Indians, 317 F.3d 840, 849 (8th Cir. 2003) (*citing* Nat'l Farmers, 471 U.S. at 856, 105 S.Ct. 2447 and Iowa Mut., 480 U.S. at 20 fn. 14, 107 S.Ct. 971)). The exhaustion requirement gives tribal courts the opportunity "to explain to the parties the precise basis for accepting jurisdiction" and to "provide other courts with the benefit of their expertise in such matters in the event of further judicial review." Nat'l Farmers, 471 U.S. at 857. Additionally, exhaustion would be a meaningless exercise if federal courts were to initially ignore

7

the determinations of tribal courts. Plains Commerce Bank, 491 F.3d at 889.

Exhaustion is not required, in the following circumstances: (1) where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; (2) where the action is patently violative of express jurisdictional prohibitions; or (3) where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." Nat'l Farmers, 471 U.S. at 856 fn.21. Exhaustion is also not required if federal law expressly provides that a claim can only be heard in federal court, *see, e.g.*, Blue Legs v. U.S. Bureau of Indian Affairs, 867 F.2d 1094, 1098 (8th Cir. 1989), or if the case does not fall within a Tribe's inherent sovereign authority because the tribal court simply lacks authority to adjudicate disputes arising from such conduct. *See* Hornell Brewing Co. v. Rosebud Sioux Tribal Court, 133 F.3d 1087 (8th Cir. 1998).

According to Farmers Union, the exhaustion requirement is not applicable in this case. In their view, the jurisdictional exception to exhaustion applies because tribal jurisdiction is plainly lacking. Therefore, requiring exhaustion would serve no other purpose then to delay and would impose an unwarranted burden of proceeding to full trial on the merits and of having to appeal if unsuccessful at trial.

Even though these concerns may be realistic, the Court cannot agree that tribal jurisdiction is plainly lacking. The Court has found a "colorable" claim of tribal jurisdiction based on the record and the standard of review. So, while Farmers Union has litigated a challenge to the Tribal Court's jurisdiction in Tribal Court , it has not exhausted its remedies in tribal appellate court. The tribal appellate court may reverse or affirm the Tribal Court's jurisdictional ruling. Nevertheless, at some point, it must be given the opportunity to evaluate the claim. Until tribal appellate courts have had the "opportunity to review the determinations of the lower tribal courts" and to "rectify any errors," tribal evaluation of its own jurisdiction is not complete. Iowa Mut., 480 U.S. at 16-17, *quoting* Nat'l Farmers, 471 U.S. at 857 (1985). Accordingly, out of deference for the proper respect for tribal legal institutions, the Court will defer to Tribal Court until tribal remedies are exhausted.

When a court finds that tribal exhaustion is required, the court can stay or dismiss the action, although it is error to dismiss for lack of subject matter jurisdiction. Sharber v. Spirit Mountain Gaming Inc., 343 F.3d 974, 976 (9th Cir. 2003). If dismissal may result in the running

8

of the applicable statute of limitations, the court should stay the action instead of dismissing it. *Id.* To ensure that Farmers Union does not encounter any problems with the statute of limitations, the Court will stay the action instead of dismissing it. The Court abstains from exercising its jurisdiction over the case at this time.

I have previously cited in this order and opinion the case of <u>Plains Commerce</u>. I was the trial judge in that case. The case was affirmed on appeal by the United States Court of Appeals for the Eighth Circuit. As I read the appellate opinion, I was struck by the fact that such opinion would clearly and substantially broaden the jurisdiction of tribal courts in the Eighth Circuit. It would allow tribal courts to decide what common law principles were to be applied in tribal courts. This would be a significant expansion of tribal court jurisdiction in civil cases. In the past few days, I have noted that the United States Supreme Court has granted the petition of Plains Commerce for a writ of certiorari. Apparently, we will have further guidance from the Supreme Court.

## ORDER

Now, therefore,

IT IS ORDERED, as follows:

(1) The motions of defendants to dismiss (Docs. 10 and 20) are denied.

(2) The motions of defendants to stay (Docs. 10 and 20) this federal action are granted.

Dated this **24th** day of January, 2008.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY _____ DEPUTY

(SEAL)

9